Adam M. Apton (SBN 316506)
**LEVI & KORSINSKY, LLP**
1160 Battery Street, East Suite 100
San Francisco, CA 94111
Telephone: (415) 373-2420
Facsimile: (415) 484-1294
Email: aapton@zlk.com

Mark S. Reich*
Michael N. Pollack*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com

*pro hac vice* forthcoming

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACRYSTAL DAVIS, TODD GOSS, STEPHEN VACCARO, TYREE CALDWELL, ZACHARY ROHRS, and JAMES DEKOSTER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ROBLOX CORPORATION, | |
| Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     PARTIES ...........................................................................................................4

   A.   Plaintiffs .......................................................................................................4

   B.   Defendant ......................................................................................................8

III.    JURISDICTION AND VENUE .......................................................................8

IV.     FACTUAL ALLEGATIONS ...........................................................................9

   A.   Roblox's Gaming Platform ..........................................................................9

   B.   Dangers on Roblox for Minors ..................................................................14

   C.   Roblox's Inadequate Response to User Safety Concerns ..........................16

   D.   Parents' Difficult Decisions and Loss ........................................................23

V.      CLASS ACTION ALLEGATIONS ...............................................................25

VI.     CAUSES OF ACTION ...................................................................................27

   COUNT ONE ...................................................................................................27

   COUNT TWO ...................................................................................................29

   COUNT THREE ...............................................................................................31

   COUNT FOUR .................................................................................................35

   COUNT FIVE ...................................................................................................38

   COUNT SIX ......................................................................................................40

   COUNT SEVEN ...............................................................................................43

   COUNT EIGHT ................................................................................................45

   COUNT NINE ...................................................................................................46

   COUNT TEN .....................................................................................................47

   COUNT ELEVEN .............................................................................................48

   COUNT TWELVE ............................................................................................49

   COUNT THIRTEEN .........................................................................................50

   COUNT FOURTEEN ........................................................................................51

   COUNT FIFTEEN ............................................................................................52

   COUNT SIXTEEN ...........................................................................................54

   COUNT SEVENTEEN .....................................................................................55

   COUNT EIGHTEEN ........................................................................................56

PRAYER FOR RELIEF ............................................................................................57

DEMAND FOR TRIAL BY JURY ..........................................................................58

1

## I.    **INTRODUCTION**

2

1.     This Class Action is brought against Roblox Corporation ("Roblox Corp." or

3

"Roblox"), a California-based corporation, for its repeated and blatant failures to warn parents

4

about the lack of protection and security afforded to users — mainly minors — on its Roblox

5

gaming, marketplace, and social media platform (the "Platform"), while at the same time

6

representing to parents that it was addressing safety issues on the Platform. As a result, parents

7

have been left with limited and harmful options of either protecting their children by withdrawing

8

them from the Platform — thereby forfeiting any money spent on Roblox's digital currency

9

("Robux"), often consisting of investments of hundreds or even thousands of real US dollars

10

spent on virtual currency and in-game items — or spend additional money on safety tools to

11

safeguard their children's experience on the Platform. This burden of ensuring a safe environment

12

on the Platform should not fall on parents' shoulders alone; safety on the Platform begins and

13

ends with Roblox's design of the Platform.

14

2.     The Platform offers users an online gaming experience where players create

15

online avatars with customizable appearances, clothing, and animations, and interact with other

16

users in a digital universe. Games and content on the Platform are generally user-created; third

17

parties are responsible for nearly all content that is usable and playable.

18

3.     Roblox focuses its development on the Platform itself, creating the design tools,

19

server access, communications systems, app integration, and digital currency which collectively

20

operate as the skeleton upon which the third-party games are built.

21

4.     The Platform is marketed both as a gaming platform and as a social experience.

22

The Roblox Platform boasts features that are common to other social media platforms, such as

23

Facebook and X. Users can privately message each other, add each other as Connections and

24

Trusted Connections, and join groups with hundreds or even thousands of users. Roblox has few

25

hard-coded restrictions on messages between users; adults and minor users over the age of 13

26

can, by default, message each other directly on the Roblox platform.

27

28

5.      Roblox primarily generates its revenue through the sale of Robux. This business model is incredibly profitable, generating revenues of 3.6 billion dollars in 2024.[1] Roblox also makes money by allowing users to purchase items on the Platform's marketplace and by charging Robux fees on transactions made between third-parties on the Platform, creating an online economy where users are in constant need of Robux to purchase customizations for their avatars.

6.      In short, the Platform is intentionally designed to encourage players, including minors, to continually acquire and spend Robux on the Platform.

7.      This "Roblox economy" creates an ecosystem where minors are vulnerable to predators who often induce users to engage in inappropriate actions, both on and off the Platform, in exchange for Robux. Indeed, numerous predators have been arrested within the US for using Roblox to groom and attract minors. According to Roblox's own statistics, approximately 40% of its active daily users are under the age of thirteen.[2] The real number of minor users is likely to be even higher; when users sign up for an account on the Platform, they self-report their own age, with little, if any, verification required.

8.      Minors, more than anyone, are particularly susceptible to the social pressure of fitting in or being accepted, often feeling compelled to upgrade their avatars (by purchasing clothing, accessories, animations, and other cosmetic upgrades) to fit in or gain social status among peers.

9.      However, the ultimate party responsible for these Robux purchases are users' parents.

---

[1] *Roblox Reports Fourth Quarter and Full Year 2024 Financial Results*, Roblox (Feb. 6, 2025), https://ir.roblox.com/news/news-details/2025/Roblox-Reports-Fourth-Quarter-and-Full-Year-2024-Financial-Results/default.aspx (last visited Sept. 10, 2025).

[2] Libby Brooks and Jedidajah Otte, *Risks to children playing Roblox 'deeply disturbing', say researchers*, The Guardian (Apr. 14, 2025) https://www.theguardian.com/technology/2025/apr/14/risks-children-roblox-deeply-disturbing-researchers#:~:text=In%202024%2C%20the%20platform%20had,experience%20on%20Roblox%20every%20day%E2%80%9D (last visited Sept. 9, 2025).

10.     Roblox has recently faced a flurry of lawsuits arising from minors who were groomed and even assaulted by predators on Roblox. Furthermore, as recently as August 14, 2025, the Attorney General of Louisiana filed a lawsuit against Roblox over its lack of protection for child users.[3]

11.     Roblox has long been aware of such issues on its Platform. A blogger raised concerns about Roblox's safety in 2009, leading to a direct conversation with Roblox's CEO David Baszucki.[4]

12.     Accordingly, Roblox has long been on notice to take reasonable steps to protect its young users from exposure to any explicit, pornographic or sexual materials, or from any exploitation from other users on the Platform.

13.     To assuage parents' fears, Roblox touts that "[s]afety is foundational to everything [it] does" and to show it, Roblox claims to have built "a platform with industry-leading safety and civility features" that continues to "evolve our platform as our community grows."[5]

14.     Reasonable consumers, hearing Roblox's safety-focused statements, would expect that some portion of their purchases would be earmarked for use on developing the safety of the Platform.

15.     Instead of taking reasonable steps to secure the Platform, especially given the history of minors harmed on the Platform, Roblox has yet to implement appropriate safety measures for its Platform. Even today, no verification is needed for any child to sign up for the Platform. As the Platform is free to access, children have no barrier even slowing their attempts to create an account on Roblox.

---

[3] Sara Cline And Barbara Ortutay, *Louisiana sues Roblox alleging the popular gaming site fails to protect children*, MSN (Aug. 14, 2025) https://www.msn.com/en-us/news/us/louisiana-sues-roblox-alleging-the-popular-gaming-site-fails-to-protect-children/ar-AA1KyAuA?ocid=BingNewsSerp (last visited Sept. 9, 2025).

[4] *Is Roblox Safe for Kids? Not Sure So I Blocked It*, PARDON MY FRENCH, https://pardonmyfrench.typepad.com/pardonmyfrench/2009/08/is-roblox-safe-for-kids-not-sure-so-i-blocked-it.html (last visited Sept. 9, 2025).

[5] *Empowering the Roblox Community*, ROBLOX, https://corp.roblox.com/safety (last visited Sept. 10, 2025).

16.    Even worse, Roblox has not only failed to warn parents and users about the dangers of using the Platform, but it has also taken active steps to silence its own community members who are sounding the alarm as to the dangers facing young users on the Platform. Roblox has repeatedly taken legal action against its users for bringing public awareness to the dangers of using the Platform, including suing a YouTuber who exposed a Roblox user for engaging criminal activities targeting minors[6] and recently sending a cease and desist letter to the YouTuber Schlep, and banning him from the Platform, because of his efforts to expose predators and work with law enforcement to catch pedophiles on the Platform.[7]

17.    Due to Roblox's failures to make the Platform safe and/or warn users of its dangers, as well as its campaign of concealment and misrepresentation, parents of minor Roblox users have been forced to either: (1) deactivate their Roblox accounts, forfeiting all associated purchases made with Robux; or (2) spend additional money on safety features sold by Roblox that should be available to parents as part of the Platform in the first instance.

18.    As a result of Roblox's actions, the value of Robux purchased by parents has decreased, and potentially been destroyed while Roblox retains its profits from its dangerous Platform.

## II.    PARTIES

### A.    Plaintiffs

19.    Plaintiff LaCrystal Davis is a citizen and resident of Illinois. Plaintiff Davis had several minor children who played on the Platform, causing Plaintiff Davis to spend at least $1000 on Robux for her children. Plaintiff Davis's purchase of Robux occurred in Illinois. In light of the dangers present on the Platform, Roblox's failure to take necessary measures to secure

---

[6] Olivia Carville and Cecilia D'Anastasio, *Roblox's Pedophile Problem*, BLOOMBERG (Jul. 22, 2024) https://www.bloomberg.com/features/2024-roblox-pedophile-problem/ (last visited Sept. 9, 2025).

[7] *Roblox Retaliates Against Child Abuse Survivor Who Exposed Platform's Predator Problem*, WRAL NEWS (Sept. 5, 2025) https://www.wral.com/story/roblox-retaliates-against-child-abuse-survivor-who-exposed-platforms-predator-problem/22146413/ (last visited Sept. 9, 2025).

its Platform, and Roblox's active silencing of users warning the public about the dangers on the Platform, Plaintiff Davis has had to ban her kids from using the Platform. As a result, the Robux, and items purchased using Robux, have become worthless.

20.     Plaintiff Kaitlin Stevens is a citizen and resident of New York.  Plaintiff Stevens has a minor stepdaughter, who she purchased Robux for on several occasions. Plaintif Stevens' purchases of Robux occurred in the state of New York. Plaintiff Stevens was aware that the Platform was marketed towards children. Plaintiff Stevens purchased the Robux with the expectation that Roblox would be taking sufficient steps to ensure the safety of children on the Platform. Plaintiff Stevens would have not purchased the Robux, or paid less for the Robux, if she was aware that Roblox was not taking sufficient steps to ensure the safety of childten on the Platform.

21.     Plaintiff Todd Goss is a resident and citizen of California. Plaintiff Goss purchased Robux for his minor stepdaughter through the Xbox store and through Roblox, while in the state of California. While aware of the general dangers of internet-based games, Plaintiff Goss believed the Platform was safe for minors. Plaintiff Goss's stepdaughter began playing Roblox at the age of 6, and encountered messages from a strange user asking his stepdaughter to direct message them. After seeing the messages, Plaintiff Goss created a "parent account" so that he could add restrictions to his stepdaughter's account, including chat restrictions and a close monitoring scheme. Plaintiff Goss was unable to turn off public, general messages, meaning his stepdaughter was still exposed to whatever content was being communicated around her immediate physical vicinity within the Platform. Plaintiff Goss later viewed a universal update message sent directly by Roblox, saying that Roblox was safe for kids. Plaintiff Goss believed that some portion of the money he exchanged for Robux was being spent on securing the Platform for minors. Since news broke about the cease and desist letter being sent to the YouTuber Schlep, Plaintiff Goss refuses to purchase new Robux, as he fears he would be funding a company that, in essence, allows for predators to communicate or otherwise cause harm to minors. Plaintiff Goss would resume purchasing Robux if Roblox demonstrated an actionable plan to remedy the

safety situation on the Platform and provided evidence of its intent to follow through with that plan.

22.    Plaintiff Stephen Vaccaro is a resident and citizen of Pennsylvania. Plaintiff Vaccaro purchased Robux for his minor daughter digitally on the Platform and via physical gift cards from brick-and-mortar retail stores, while in the state of Pennsylvania. Plaintiff Vaccaro believed that the Platform was safe for minors, and predicated his decision to allow his daughter to engage with the Platform on that belief. Plaintiff Vaccaro would not have purchased Robux or allowed his daughter to interact with the Platform if he had been aware of the dangers facing minors on the Platform. Plaintiff Vaccaro refuses to purchase Robux until Roblox takes steps to secure its Platform.

23.    Plaintiff Tyree Caldwell is a resident and citizen of Alabama. Plaintiff Caldwell purchased Robux for several of his children from a brick-and-mortar Dollar General located in Alabama, as recently as three months ago. At the time of purchase, Plaintiff Caldwell believed the Platform was safe for minors. Plaintiff Caldwell would not have purchased the Robux if he was aware of the dangerous conditions facing minors on the Platform. Plaintiff Caldwell refuses to further purchase Robux, either at its current market price or at all, until Roblox takes steps to secure its Platform.

24.    Plaintiff Zachary Rohrs is a resident and citizen of Colorado. Plaintiff Rohr purchased Robux for five of his children online, while primarily located in Colorado, but also in Texas and Pennsylvania, as recently as within the last year. While generally aware of the dangers of internet-based games, Plaintiff Rohrs believed the Platform was reasonably safe for minors. Plaintiff Rohrs believed that at least some portion of the money he spent on Robux was being spent to maintain and provide security on the Platform. Plaintiff Rohrs would not have purchased Robux if he was aware of the dangerous conditions facing minors on the Platform. At one point in a seemingly harmless "Bingo" game on the Platform, his youngest daughter was approached by a stranger who asked for his daughter's age and kept harassing her with spammed messages such as "Hey baby." Plaintiff Rohrs was unaware the game had chatting systems and removed

his children's access to the Platform, and attempted to block the account messaging his daughter. After having spent hundreds, if not thousands of dollars on Robux, Plaintiff Rohrs took it upon himself to secure the Platform for his children as much as possible, including creating a parent account to restrict chat access and paying money to remove identifying information from his daughter's user name. Roblox, therefore, profited from Plaintiff Rohr's efforts to keep his children safe on the Platform. Plaintiff Rohrs hoped these steps would be sufficient to enable his children to re-engage with their friends. However, after receiving the recent news of the cease-and-desist letters sent to Schlep, Plaintiff Rohrs discussed the situation with his kids, who still used Roblox as the primary meeting platform to spend time with friends. Given the amount of money invested into the Platform, and the prolific nature of Roblox as a meeting place for his children's friends, Plaintiff Rohrs is begrudgingly "stuck" with allowing his kids to engage with the Platform, and purchasing Robux, at extra cost to himself to pay for Roblox-provided safety features that could otherwise be provided free to parents to improve safety for minors. Plaintiff Rohrs now must set aside time to monitor his children's activity and interactions on the Platform.

25.     Plaintiff James Dekoster is a resident and citizen of Arizona. Plaintiff Dekoster purchased Robux for his children, while located in Arizona, as recently as within the last year. While generally aware of the dangers of internet-based games, Plaintiff Dekoster believed the Platform was reasonably safe for minors. Plaintiff Dekoster believed that at least some portion of the money he spent on Robux was being spent to maintain and provide security on the Platform. Plaintiff Dekoster would not have purchased the Robux if he was aware of the dangerous conditions facing minors on the Platform. Plaintiff Dekoster made a parent account to monitor his children's chats. He also checks in with them regularly to discuss what is happening while they play on the Platform. At one point, Plaintiff Dekoster realized his daughter's account had identifying information which required him to pay money in order to remove it from his daughter's account user name. Plaintiff Dekoster also took steps and paid money to rent a private server for his children to meet up and chat directly with their friends. Roblox, therefore, profited from Plaintiff Dekoster's efforts to keep his children safe on the Platform; efforts that should

have been taken by Roblox to begin with. Plaintiff Dekoster first heard about the dangers on the Platform approximately a year ago, and immediately disallowed the use of the Platform for his children. He was later notified that Roblox had taken steps to secure the Platform by providing parent accounts that allow parents to restrict of chat messages for minors. Plaintiff Dekoster subsequently allowed his children to rejoin the Platform, and resumed making purchases of Robux, including purchasing Robux for minor friends of his children and family members. However, after learning about the cease-and-desist letter sent to YouTuber Shlep, Plaintiff Dekoster was unsure of what to do with his Roblox accounts, as he invested significant amounts of money into the Platform, all of which would go to waste if his children's accounts were deleted or otherwise abandoned.

**B.    Defendant**

26.    Defendant Roblox Corporation is a California corporation with a principal place of business at 3150 South Delaware Street, San Mateo, California 94403. Defendant Roblox Corporation was incorporated in Delaware until July 29, 2025 and is currently incorporated in Nevada.

### III.    JURISDICTION AND VENUE

27.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from a Defendant, there are more than 100 Classes members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

28.    This Court has personal jurisdiction over Roblox Corp. because Roblox has its principal headquarters in San Francisco, California, does business in California directly or through agents, and has sufficient minimum contacts with California such that it has intentionally availed itself of the laws of the United States and California.

29.    Venue is proper under 28 U.S.C. § 1391(a) through (d) because the Roblox Corp. headquarters and principal place of business are located in this District, Roblox Corp. resides in

this District, and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this District, including, without limitation, decisions made by Roblox's governance and management personnel.

## IV.    FACTUAL ALLEGATIONS

### A. Roblox's Gaming Platform

30.    Roblox launched the Platform from California in 2006. Since its inception, the Platform has been different than other video games. Instead of Roblox itself creating game content, the Platform creates tools that allow users within the Platform to create custom games and cosmetics.

31.    The Platform is a uniquely social video game. Users can interact with each other across "millions of user-created games and virtual worlds" via virtual in-person chatting, direct messaging, and even voice chatting has been implemented into the platform.[8]

32.    Any user can create content, post it on the Platform, and earn money from other players purchasing the in-game content they created.

33.    Each game on the Platform places users in a virtual world, often with other users, allowing users to engage in wide variety of activities.

34.    The Platform offers access to games that allow users to engage with a virtual world simulating everyday life, enabling users to "[m]eet and make new friends," obtain a plot of land and "[d]esign and build the place of your dreams," pursue careers, and even engage in roleplay and create a family.[9]

35.    Other games offer simple games for quick and competitive play between players in virtual arenas, including games analogous to "hot potato."[10]

---

[8]   *Roblox*, ESAFETY COMMISSIONER - AUSTRALIAN GOVERNMENT (Aug. 14, 2025) https://www.esafety.gov.au/key-topics/esafety-guide/roblox (last visited Sept. 9, 2025).
[9]   *Welcome to Bloxburg*, COFFEE STAIN STUDIOS, https://coffeestain.com/games/welcome-to-bloxburg/ (last visited Sept. 9, 2025).
[10]   *Pass the Bomb! by Detonate Games*, ROBLOX https://www.roblox.com/games/2961583129/Pass-the-Bomb (last visited Sept. 9, 2025).

36.     While the users that created these games have some say as to who can access these games, ultimate control of who has access to games across the Platform lies with Roblox.[11]

37.     In short, Roblox provides the digital space for these games and has final control over who accesses games and content located on the Platform.

38.     The Platform is completely free to download and install. Any user can download the application on desktop, Android, iOS, PlayStation, Xbox, Meta Quest or Amazon and begin playing after creating an account, with no purchase or verification necessary.

39.     The user's account may include any information, including a user's private or identifying information. While Roblox's privacy policy warns users not to include personal information publicly, Roblox does not prevent this sharing.[12]

40.     After a user signs up for a Platform account, they then create a "digital avatar." This digital avatar can be customized with in-game items purchased with Robux. These digital avatars are digital representations of the user on the Roblox platform, and can often times be designed to look like the user. When a user plays a game in Roblox, they appear to other users as their digital avatar.

41.     The Platform markets itself as a social experience, describing itself as a "way people come together."[13]

---

[11] Roblox reserves the right to "take action" against users for violating Community Standards. *See Roblox Community Standards*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/203313410-Roblox-Community-Standards#:~:text=Harass%2C%20bully%2C%20discriminate%2C%20or,encourage%20others%20to%20do%20so (last visited Sept. 9, 2025); *see also* Lauren Ficten, *Roblox, one of the world's most popular gaming platforms, bans hate speech. Users have found a way to spread it anyway*, CBSNews (Aug. 23, 2025) https://www.cbsnews.com/news/roblox-spray-paint-hate-speech/ (last visited Sept. 9, 2025).

[12]     *Roblox       Privacy       and       Cookie       Policy*,       ROBLOX, https://en.help.roblox.com/hc/article_attachments/38873040764180 (last visited Sept. 9, 2025).

[13] *What We Do*, ROBLOX, https://corp.roblox.com/ (last visited Sept. 9, 2025).

1

2

3

4

5

6

7

8

9

10



*Figure 1 – Roblox's "About Us" Description*[14]

11

12      42.      Roblox also markets its Platform as an educational tool for children, encouraging

13   children to use the Platform to increase "knowledge absorption and retention", while assuring

14   parents that the Platform is safe and civil.[15]

15

16

17

18    

19

20

21

22

23

24

25

26   _____

[14] *Id.*

[15] *Roblox Educational Experiences*, Roblox, https://corp.roblox.com/education (last visited Sept. 9, 2025).

27

28

*Figure 2 – Roblox's Education Page Description*[16]

43.    Roblox's CEO, David Baszucki, described the Platform as "an engaging alternative to a local playground on a rainy day for eight-year-olds.[17]

44.    The Platform allows for multiple forms of communication between users. Users can message each other in games, through private messages, and users can also voice chat with each other online through the Platform.

45.    Users who wish to access certain mature games and have completely unfiltered chats must verify their age through facial ID or other verification methods.[18] Outside of accessing this mature content and features, Roblox has no form of verification during the account set-up process.

46.    The Platform, as a free-to-play experience, relies on the sale of Robux and Premium subscriptions for profit. Robux are a premium in-platform currency that Roblox uses for the economy on the Platform. Users purchase Robux with real money and can then spend that Robux on outfits for their avatars and items in-game. Robux can be purchased directly from Roblox[19] or from retailers such as Amazon[20] and Target.[21]

---

[16] *Id.*
[17] David Baszucki, *The CEO of Roblox on Scaling Community-Sourced Innovation*, HARV. BUS. REV. (Mar.-Apr. 2022) https://hbr.org/2022/03/the-ceo-of-roblox-on-scaling-community-sourced-innovation (last visited Sept. 9, 2025).
[18] *Account Settings: Age ID Verification*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/4407282410644-Age-ID-Verification (last visited Sept. 9, 2025).
[19] *Robux: Upgrades*, ROBLOX, https://www.roblox.com/upgrades/robux?ctx=navpopover (last visited Sept. 9, 2025).
[20] *Roblox Digital Gift Card*, AMAZON, https://www.amazon.com/Robux-Roblox-Online-Game-Code/dp/B07RZ74VLR/ref=asc_df_B07RZ74VLR?tag=bingshoppinga-20&linkCode=df0&hvadid=79920871042467&hvnetw=o&hvqmt=e&hvbmt=be&hvdev=c&hvlocint=&hvlocphy=114010&hvtargid=pla-4583520397393675&psc=1 (last visited Sept. 9, 2025).
[21] *Roblox Gift Card*, TARGET, https://www.target.com/p/roblox-gift-card-email-delivery/-/A-93562338 (last visited Sept. 9, 2025).

1

2

3

4

5

6

7

8

9

10



11    *Figure 3 – Purchase Page for Robux on the Platform's Website*[22]

12    47.    Users can link a credit card to their Roblox account, enabling them to constantly

13    buy Robux without the need to reenter any payment information.[23]

14    48.    Roblox also sells Roblox Premium subscriptions. Users can pay Roblox up to

15    $19.99 a month to receive a monthly supply of Robux, "premium" benefits within games, a 10%

16    bonus to purchase Robux, and the ability to trade items with other users.[24]

17

18

19

20

21

22

23

---

[22]    *Enjoy    up    to    25%    more    Robux*,    ROBLOX,
https://www.roblox.com/upgrades/robux?ctx=navpopover (last visited Sept. 10, 2025).
[23]    *Payments:    Adding    and    Updating    Payment    Information*,    ROBLOX,
https://en.help.roblox.com/hc/en-us/articles/203312560-Adding-and-Updating-Payment-Information (last visited Sept. 9, 2025).
[24] *Roblox Premium*, ROBLOX, https://www.roblox.com/premium/membership (last visited Sept. 9, 2025).

49.    Users can spend this Robux to purchase in-game clothing, items and accessories to customize their avatar,[25] experience passes[26] which give "players special perks and abilities" in the Platform,[27] access to private servers,[28] or to create and upload content for the Platform.[29]

50.    Users can spend hundreds, even thousands of dollars on purchasing Robux, Premium memberships and in-game items. These purchases are locked to an individual account and are unable to be transferred to a new account.[30]

**B.  Dangers on Roblox for Minors**

51.    Roblox may market itself as a social platform that brings users together, but pulling back the curtain reveals Roblox's failure to protect its minor users.

52.    Predators on the Platform exploit the tools and coding Roblox provides to create prurient games and experiences that harm and traumatize other Platform users, especially minors.

---

[25] *Creating, Buying and Selling Avatar Items: The Marketplace*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/203313300-The-Marketplace (last visited Sept. 9, 2025).

[26] Experience passes grant game-specific perks, such as in "Welcome to Bloxburg", where purchasing experience passes allows users to gain large plots of digital land to build larger houses for themselves. *See Welcome to Bloxburg,* FANDOM, https://welcome-to-bloxburg.fandom.com/wiki/Gamepasses (last visited Sept. 9, 2025).

[27] *Creating, Buying and Selling Experience Items: Experience Passes*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/203314040-Experience-Passes (last visited Sept. 9, 2025).

[28] Alicja Klos, *Master Your Roblox Budget & Prevent Overspending*, DUNDLE (Oct. 3, 2024) https://dundle.com/magazine/en/roblox-smart-spending/ (last visited Sept. 9, 2025).

[29] *Creator Hub: Marketplace fees and commissions*, ROBLOX, https://create.roblox.com/docs/marketplace/marketplace-fees-and-commissions (last visited Sept. 9, 2025).

[30] *Premium: Can I transfer my Membership to another Roblox account?*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/203312640-Can-I-transfer-my-Membership-to-another-Roblox-account (last visited Sept. 9, 2025).

14
CLASS ACTION COMPLAINT

These games and experiences often simulate sexual activities,[31] including, for example, working in a strip club and dancing suggestively.[32]

53.    While Roblox may temporarily shut down these games, the games are simply reuploaded days or hours later by the same or different users.[33]

54.    Additionally, numerous problematic groups exist on the Platform itself, with names such as "Adult Studios" where users trade in Robux, sexual favors, and child pornography.[34] Some groups were shut down by Roblox moderators, while others avoided action despite content within the groups being moderated.[35]

55.    Unfortunately, such disturbing behavior does not remain solely within the games in Roblox. Predators use the platform to groom minors, luring them off the digital Platform, with some even arranging meetings with the minors in person.

56.    In 2019, Welsh police apprehended a pedophile who was grooming over 150 children online using the Platform.[36] More recently, in 2025, a Florida 17-year-old was arrested for using the Platform to inappropriately message young children, lying about his age to appear

---

[31] These "condo games" are games where users engage in explicit sexual acts with other users, using their online Roblox avatars. Burt Helm, *Sex, lies, and video games: Inside Roblox's war on porn*, FAST COMPANY (Aug. 19, 2020) https://www.fastcompany.com/90539906/sex-lies-and-video-games-inside-roblox-war-on-porn (last visited Sept. 9, 2025). In one such Platform game, users were able to simulate attacking and raping the avatar of a seven-year-old girl playing on the Platform. *Roblox 'gang rape' shocks mother*, BBC (Jul. 3, 2018) https://www.bbc.com/news/technology-44697788 (last visited Sept. 9, 2025).
[32] EJ Dickson, *Inside the Underground Strip-Club Scene on Kid-Friendly Gaming Site Roblox*, ROLLING STONE (Sept. 12, 2021) https://www.rollingstone.com/culture/culture-features/roblox-virtual-strip-clubs-condo-games-sex-1197237/ (last visited Sept. 9, 2025).
[33] Burt Helm, *Sex, lies, and video games: Inside Roblox's war on porn*, FAST COMPANY (Aug. 19, 2020) https://www.fastcompany.com/90539906/sex-lies-and-video-games-inside-roblox-war-on-porn (last visited Sept. 9, 2025).
[34] *Roblox: Inflated Key Metrics For Wall Street And A Pedophile Hellscape For Kids*, HINDENBURG RESEARCH (Oct. 8, 2024) https://hindenburgresearch.com/roblox/ (last visited Sept. 9, 2025).
[35] *Id.*
[36] Liz Day, *Paedophile groomed 150 children to engage in sexual activity using online game Roblox*, WALES ONLINE (May 11, 2019) https://www.walesonline.co.uk/news/wales-news/paedophile-groomed-150-children-engage-16258877 (last visited Sept. 9, 2025).

more "acceptable" to young children. This person admitted to contacting four to five children every day over the course of a year for the purpose of directing the children to enact "a sexual performance" or otherwise solicit children.[37]

57.    The above two examples are not isolated incidents. "Since 2018, police in the US have arrested at least two dozen people accused of abducting or abusing victims they'd met or groomed using Roblox."[38] This number does not include those that police did not catch or arrest, or those who have kept their activities online for now.

58.    Roblox reported over 13,000 cases of suspected child sexual exploitation in 2023, a jump of over 10,000 cases from 2022.[39] As Roblox continues to grow since it went public in 2021, the amount of child exploitation on the Platform continues to grow with it.

**C.    Roblox's Inadequate Response to User Safety Concerns**

59.    Roblox has failed to meaningfully address the pedophilia and grooming that run rampant throughout its Platform. In fact, it actively conceals the dangers.

60.    Roblox has added default restrictions for accounts of users under 13. Users under 13 cannot directly message other users outside of games and, by default, cannot directly message other users inside of games. Additionally, depending on the age of the user, the account will be unable to play certain games on the website. For instance, a user under nine can only play games rated as "minimal" or "mild" content without parental consent.[40]

61.    Roblox also provides parents with limited tools and services to protect their children. These include reporting other users on the Platform for inappropriate content and

---

[37] Spencer Tracy, *Red flags on Roblox: Ocala teen convinced kids to send sexual content on game, deputies say*, WESH (May 1, 2025) https://www.wesh.com/article/florida-teen-convinced-kids-send-sexual-content-roblox-deputies-say/64638703 (last visited Sept. 9, 2025).

[38] Olivia Carville and Cecilia D'Anastasio, *Roblox's Pedophile Problem*, BLOOMBERG (Jul. 22, 2024)https://www.bloomberg.com/features/2024-roblox-pedophile-problem/ (last visited Sept. 9, 2025).

[39] *Id*.

[40] Matt Kaufman, Chief Safety Officer, *Major Updates to Our Safety Systems and Parental Controls*, ROBLOX (Nov. 18, 2024) https://corp.roblox.com/newsroom/2024/11/major-updates-to-our-safety-systems-and-parental-controls (last visited Sept. 9, 2025).

establishing a parent account on the Platform, where they can manage their children's spending limits, chats, and access to certain content on the platform.[41]

62.    Roblox announced the introduction of parent accounts on November 18, 2024. Parent accounts "allows parents and caregivers to adjust controls and review their child's activity even if they aren't physically together." [42] In essence, parents who want to "monitor[] their child's activities" must create a separate Roblox account, "link their Roblox account to their child's account[,]" and thereafter has limited tools to "manage their child's experience and access from Parental Controls."[43] Notably, parents of children under 13 receive most of these content control tools, meaning Roblox must have accurate ages for minor users for the system to operate.[44]

63.    Unfortunately, these measures are inadequate and do not substantially protect minors. Roblox accounts can be created without any form of verification. Accounts are also free, removing any possible roadblock for minors to create new accounts with adult birthdays. A minor can simply list their account as being over 13, and Roblox has no systems in place to detect this misrepresentation.

64.    In addition, Roblox focuses the vast majority of its safety efforts on users who are under 13. While these efforts remain ineffective and insufficient, the lack of even this effort for users between 13 and 17 is even more apparent. Roblox's safety efforts for users between 13 and 17 are limited in scope, recent, and ineffective.

65.    Users under 17 are barred from games that are rated as "Restricted," which "may contain strong violence, heavy realistic blood, moderate crude humor, romantic themes,

---

[41] *Parental Controls: Parental Controls FAQ*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/30428248050068-Parental-Controls-FAQ (last visited Sept. 9, 2025).

[42] Matt Kaufman, Chief Safety Officer, *Major Updates to Our Safety Systems and Parental Controls*, ROBLOX (Nov. 18, 2024) https://corp.roblox.com/newsroom/2024/11/major-updates-to-our-safety-systems-and-parental-controls (last visited Sept. 9, 2025).

[43] *Id.*

[44] *See Parental Controls: Parental Controls FAQ*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/30428248050068-Parental-Controls-FAQ (last visited Sept. 9, 2025).

unplayable gambling content, the presence of alcohol, strong language, and/or moderate fear."[45] Users under 17 are also required to have filters on private message chats with "Trusted Connections," and cannot use the Platform's voice chat feature.[46] Roblox's implementation of these restrictions, however, has been extremely reckless and ineffective, further endangering its minor users.

66.    Roblox requires age verification for accounts to access these safety features. Verification can be accomplished through two methods: using a government-issued ID or through facial age estimation. Users can verify their age through facial age estimation by uploading a facial image to Roblox, which will be analyzed by Persona, a third-party service provider. Persona places users into one of three categories: under 13, 13+, and 17+, based on an age estimation of the uploaded selfie.[47]

67.    Persona's age verification can be easily bypassed. After the messaging service Discord implemented Persona's age verification, users were able to use screenshots from another video game called "Death Stranding" to present as adults through Persona.[48] While Roblox could have implemented only ID verification, it chose to also implement Persona to gatekeep explicit material on the Platform, an easily bypassed verification method.

68.    Despite awareness of the safety issues on the Platform,[49] Roblox added a new unfiltered private messaging feature, which was not properly secured against use by minors.

---

[45] *Account Settings: Content Maturity Labels*, Roblox, https://en.help.roblox.com/hc/en-us/articles/8862768451604-Content-Maturity-Labels (last visited Sept. 9, 2025).
[46] *Account Settings: Understanding Age Checks on Roblox*, Roblox, https://en.help.roblox.com/hc/en-us/articles/39143693116052-Understanding-Age-Checks-on-Roblox#:~:text=Age%20check%20is%20a%20process%20designed%20to%20evaluate,without%20filters%20with%20Trusted%20Connections%20require%20age%20checks (last visited Sept. 9, 2025).
[47] *Id.*
[48] Tom Warren, *Reddit and Discord's UK age verification can be defeated by Death Stranding's photo mode*, The Verge (Jul. 28, 2025) https://www.theverge.com/report/714402/uk-age-verification-bypass-death-stranding-reddit-discord (last visited Sept. 9, 2025).
[49] Jonathan Vanian, *Roblox launches new age verification system to unlock unfiltered chats*, CNBC (Jul. 17, 2025), https://www.cnbc.com/2025/07/17/roblox-age-verification-friends-chat.html?msockid=031295fef1b765891c7883c0f0f464e9 (last visited Sept. 9, 2025).

69.    Roblox was aware that one of the largest safety issues facing the Platform was users moving conversations with minors that started on Roblox to other social media, such as Discord[50] or Instagram, where they could chat unfiltered.

70.    Filtering user chats also does little to address the main safety issues on the Platform. Users message minor users on the platform and direct them to continue the conversations on other uncensored social media platforms, such as Discord or Instagram. Roblox's filters can easily be bypassed by using numbers instead of letters, leaving out letters while leaving the message understandable, breaking prohibited content into multiple messages, or using emojis instead of words.

71.    Not only does Roblox do little to mitigate the dangers present on the Platform, but it actively takes firm and concrete actions against the users who attempt to call attention to the pedophilia on the platform. In 2021, Roblox filed a $1.6 million lawsuit against Ben Simon, a YouTuber who had been exposing the grooming that occurred on the Platform, for harming the company's reputation.[51]

72.    Simon had recently publicized the grooming messages sent by Arnold Castillo, a popular Roblox creator with the pseudonym of "Jacob Shedletsky". While Roblox eventually banned Castillo's account, Castillo transferred ownership of his game, *Sonic Eclipse*, based on the popular character Sonic the Hedgehog, to a friend, allowing him to continue to profit off the Platform.[52]

---

[50] Roblox also now officially allows connections to be made between Platform accounts and Discord accounts. *See* Buffy (User: 2921470028-Buffy), *How to Connect your Roblox Account to Discord*, DISCORD (May 15, 2025), https://support.discord.com/hc/en-us/articles/32137739104663-How-to-Connect-your-Roblox-Account-to-Discord#:~:text=8.-,You'll%20know%20you've%20successfully%20connected%20when%20you%20receive,Return%20to%20top (last visited Sept. 9, 2025).

[51] Olivia Carville and Cecilia D'Anastasio, *Roblox's Pedophile Problem*, BLOOMBERG (Jul. 22, 2024), https://www.bloomberg.com/features/2024-roblox-pedophile-problem/ (last visited Sept. 9, 2025).

[52] *Id.*

73.     Roblox only took down the *Sonic Eclipse* game after Sega Sammy Holdings, the copyright holder of Sonic the Hedgehog, filed a copyright infringement notice.[53]

74.     In 2023, Castillo was sentenced to 15 years in federal prison for grooming a minor online and transporting her across state lines for sex in 2022.[54] For a full year after Roblox filed suit against the user who exposed Castillo's misconduct, Castillo faced no legal restraint and continued his pattern of abuse.

75.     Roblox recently took action against another user who exposed grooming and pedophilia on Roblox. On August 9, 2025, a YouTuber known as "Schlep," who keeps his real identity anonymous, posted that he had received a cease-and-desist notice from Roblox and had been banned from the Platform.[55]

---

[53] *Id.*

[54] *Press Release: New Jersey Man Sentenced to 15 Years in Federal Prison After Grooming Minor Online and Transporting Her Across State Lines via Uber for Sex*, DEPARTMENT OF JUSTICE - UNITED STATES ATTORNEY'S OFFICE, SOUTHERN DISTRICT OF INDIANA (Aug. 30, 2023) https://www.justice.gov/usao-sdin/pr/new-jersey-man-sentenced-15-years-federal-prison-after-grooming-minor-online-and (last visited Sept. 19, 2025).

[55] Schlep (@RealSclep), X, FORMERLY TWITTER (Aug. 9, 2025) https://x.com/RealSchlep/status/1954255952997478537 (last visited Sept. 9, 2025).

**Re: LEGAL CEASE AND DESIST NOTICE FROM ROBLOX CORPORATION**

Dear ▓▓▓▓▓▓▓▓▓▓

We write on behalf of Roblox Corporation. This letter serves as a formal cease and desist notice regarding your unauthorized and harmful activities on the Roblox platform. Your actions are a violation of Roblox policies and directly undermine Roblox's safety efforts and, critically, are exposing our users to increased risk. Those actions include:

- Engaging in simulated child endangerment conversations
- Sharing or soliciting personally identifiable information (PII)
- Directing users to move conversations off platform

Roblox is committed to aggressively combating illegal and harmful conduct, including child exploitation, through a dedicated and sophisticated team of safety professionals, advanced moderation systems, and partnerships with law enforcement agencies. For example, Roblox proactively reports potentially harmful content to the National Center for Missing and Exploited Children (NCMEC), the designated reporting entity for the public and electronic service providers regarding suspected child sexual exploitation. Further, Roblox maintains direct communication channels with NCMEC and agencies like the FBI for immediate escalation of serious threats that we identify.

While Roblox acknowledges that your stated intentions may be to protect children, and while it recognizes the serious nature of online predatory behavior, your methods, including failing to immediately report suspicious activity to Roblox through proper channels, are actively interfering with Roblox's established safety protocols and, critically, are exposing Roblox's users to increased risk.

Accordingly, and pursuant to Roblox's policies, Roblox will be closing your accounts. Please note that Roblox Community Standards prohibit opening new accounts to evade an enforcement action. Therefore we demand that you cease and desist from accessing the Roblox platform. Please be advised that Roblox reserves all rights to take any and all appropriate legal action against you should your violations of the Roblox Community Standards continue. Such actions may include, but are not limited to, claims for breach of contract (specifically, violation of the Roblox Terms of Use to which all users agree) and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et sec.*, which prohibits unauthorized access to computer systems and data.

Very truly yours,

*Figure 4 – The Cease and Desist Letter Sent from Roblox to Schlep*[56]

---

[56] *Id.*

21
CLASS ACTION COMPLAINT

76.     Schlep's YouTube channel had focused on catching pedophiles and groomers on the Platform and then reporting them to the police. According to Schlep, he has helped authorities arrest six Platform users.[57]

77.     Roblox claims that it banned Schlep, and other "vigilantes"[58] like him, because his behavior, impersonating children to contact adults and messaging adults off-platform, encouraged others to engage in the same behavior.[59] This is despite the fact that users have been grooming children online and chatting off-platform for years before Schlep began posting videos.

78.     In response to outcry over its actions, Roblox announced that it would be taking a big step in protecting children; renaming "Friends" to "Connections" and "Trusted Connections."[60] This change is clearly superficial at best and does not address the serious problems that allow predators to use Roblox for child exploitation.

79.     When Roblox's Chief Safety Officer, Matt Kaufman, was asked about the dangers children face on the Platform, he deflected the legitimate concerns and said "I think sometimes we're losing sight of the tens of millions of people where Roblox is an incredibly enriching part of their life."[61]

---

[57] Connor Murray, *Louisiana Sues Roblox As Controversy Over Child Safety And Banning 'Vigilante' Users Grows*, FORBES (Aug. 15, 2025), https://www.forbes.com/sites/conormurray/2025/08/15/louisiana-sues-roblox-as-controversy-over-child-safety-and-banning-vigilante-users-grows/ (last visited Sept. 9, 2025).
[58] This categorization of Schlep, and others like him, as "vigilantes" is questionable as he reported the criminal activity to police, rather than "suppress and punish crime summarily" himself. *See Vigilante,* MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/vigilante (last visited Sept. 9, 2025).
[59] Matt Kaufman, Chief Safety Officer, *More on our Removal of Vigilantes From Roblox*, ROBLOX (Aug. 13, 2025) https://corp.roblox.com/newsroom/2025/08/more-on-removal-of-vigilantes-from-roblox (last visited Sept. 9, 2025).
[60] David Baszucki, Founder and CEO, *Tech Talks Episode 28: Update On Our Safety Initiatives*, ROBLOX (Aug. 15, 2025), https://corp.roblox.com/newsroom/2025/08/tech-talks-update-on-roblox-safety-initiatives (last visited Sept. 9, 2025).
[61] Scott Tong and James Perkins Mastromarino, *Roblox chief safety officer on new safety features, past cases of child abuse on the platform*, WBUR (Nov. 18, 2024), https://www.wbur.org/hereandnow/2024/11/18/roblox-safety-features (last visited Sept. 9, 2025).

80.     Instead of hiring more staff, better training staff, or restricting certain Platform features, Roblox has instead pivoted to relying on AI moderation to keep users, especially minors, safe.[62]

81.     AI moderation is not as reliable or consistent as human moderation. Research has shown that AI, including those found on Roblox, can be bypassed by changing out letters for numbers, using innuendo, or through various other methods of circumventing the AI.[63]

82.     Roblox, instead of fixing the safety issues on its own Platform, has focused on suppressing any reporting on the issues present on its Platform. These efforts have only increased the safety issues present on the platform. Roblox has deflected any investigations and banned investigators from its Platform, making it even less safe for children.

**D.    Parents' Difficult Decisions and Loss**

83.     When Roblox CEO David Baszucki was asked about parents' worries, he responded that worried parents should not "let your kids be on Roblox."[64] However, for many parents, taking their children off Roblox is a difficult and costly decision.

84.     Roblox also provides parents with limited tools and services to protect their children. These include reporting other users on the Platform for inappropriate content and establishing a parent account on the Platform, where they can manage their children's spending limits, chats, and access to certain content on the platform (the "Mitigating Efforts").[65]

---

[62] Barbara Ortutay, *Roblox rolls out open-source AI system to protect kids from predators in chats*, MSN (Aug. 7, 2025), https://www.msn.com/en-us/news/technology/roblox-rolls-out-open-source-ai-system-to-protect-kids-from-predators-in-chats/ar-AA1K5osx?ocid=BingNewsVerp (last visited Sept. 9, 2025).

[63] *Beyond the Virtual Playground: Revisiting Online Safety in Roblox*, CLICKSAFE INTELLIGENCE (2025), https://clicksafeintelligence.com/publications/beyond-the-virtual-playground (last visited Sept. 9, 2025).

[64] Zoe Kleinman & Georgina Hayes, *Keep kids off Roblox if you're worried, its CEO tells parents*, BBC (Mar. 13, 2025), https://www.bbc.com/news/articles/c5yrjkl7dd6o (last visited Sept. 9, 2025).

[65] *Parental Controls: Parental Controls FAQ*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/30428248050068-Parental-Controls-FAQ (last visited Sept. 9, 2025).

85.     While parents can delete their children's Roblox account, removing the serious danger that pervades the Platform, this comes at a cost to parents and can cause them material harm. If parents attempt to mitigate the dangers on Roblox, without deleting their children's accounts and investments, they still face concrete costs.

86.     If a parent were to delete a child's account, or forbid them from playing the Platform in an attempt to mitigate the harms caused by the Platform, they would have to abandon every purchase they have made for their child on that account.

87.     Even attempts to mitigate harm without account deletion come at a cost to parents.

88.     While setting up an account, users must choose both a "display name" and a "user name." While the display name shows up publicly when the user is in a Platform game, the username appears on the user's Roblox profile, which is publicly accessible.

89.     Users can change their display name for free, but are limited to one change every seven days.[66]

90.     Changes to the username, however, require the user to pay Robux.[67] This means that, if any identifying information was included in a username, Roblox must be paid to remove that information.

91.     Parents can also choose to only allow their children to play on a private server with their friends. This creates a version of a game on Roblox that is private and can only be joined by users allowed by the hosting user. Users under 13 can only join their Connections' private servers, and only their Connections can join their private servers. This safety comes at a cost to parents, as users must pay a fee to host private servers. This cost is determined by the owner of the game, though Roblox takes a cut for itself.[68]

---

[66] *Account Settings: Changing Your Display Name*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/4401938870292-Changing-Your-Display-Name (last visited Sept. 9, 2025).
[67] *Account Settings: Changing Your Username*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/203313130-Changing-Your-Username (last visited Sept. 9, 2025).
[68] *Experience Visit: Private/VIP Servers FAQ*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/205345050-Private-VIP-Servers-FAQ (last visited Sept. 9, 2025).

92.    In sum, Roblox charges for safety on its Platform. Roblox, therefore, has benefitted and continues to benefit from keeping the Platform unsafe – especially for minor users who make up 40% of Roblox users – and concealing the efforts of those who attempt to call attention to the dangers on the Platform.

## V.    <u>CLASS ACTION ALLEGATIONS</u>

93.    Pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), Plaintiffs bring this action on behalf of proposed nationwide Classes and "State Subclasses" defined as follows:

**<u>Nationwide Classes</u>**:

All persons in the United States who have bought Robux from Roblox (the "Robux Class").

All persons in the United States who have taken Mitigating Efforts and purchased access to private servers and/or name changes for a Roblox account on behalf of minor users under the age of 13, after November 18, 2024 (the "Security Purchase Class").

All persons in the United States who have taken Mitigating Efforts on behalf of child users under the age of 13, and ceased use of or otherwise deleted Roblox accounts with unspent Robux or items purchased with Robux after November 18, 2024 (the "Cessation Class") (collectively with the Security Purchase Class and Robux Class, the "Classes").

**<u>California Subclass</u>**: All members of the Classes who reside in California.

**<u>Pennsylvania Subclass</u>**: All members of the Classes who reside in Pennsylvania.

**<u>Colorado Subclass</u>**: All members of the Classes who reside in Colorado.

**<u>Illinois Subclass</u>**: All members of the Classes who reside in Illinois.

**<u>Arizona Subclass</u>**: All members of the Classes who reside in Arizona.

94.    Excluded from the Classes are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any of Defendant's officers or directors, any successors, all persons who make a timely election to be excluded from the Classes, and any judge who adjudicates this case, including their staff and immediate family.

95.    Plaintiffs reserve the right to amend the class definitions and/or subclass definition. Certification of Plaintiffs' claims for classwide treatment is appropriate because

Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

96.     **Numerosity and Ascertainability:** Members of the Classes are so numerous that joinder is impracticable. There are, at a minimum, millions of members of the proposed Classes and, at minimum, thousands of members of each State Subclass.

97.     **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual members of the Classes. These common questions include:

    a.  Whether Defendant fraudulently concealed and misrepresented the dangers found on the Platform;

    b.  Whether Defendant was negligent in misrepresenting the dangers found on the Platform;

    c.  Whether Defendant's misrepresentations or material omissions would likely impact a reasonable consumer's decision to install and patronize the Platform;

    d.  Whether Defendant failed to properly warn Plaintiffs of the dangers found on the Platform;

    e.  Whether Defendant designed the Platform in a way that was dangerous and defective;

    f.  Whether Defendant was unjustly enriched by its misrepresentations, failures to warn, and defective designs; and

    g.  Whether Defendant fraudulently misrepresented the steps it was taking to address safety on the Platform

These common questions of law and fact predominate over questions that affect only individual members of the Classes.

98.     **Typicality:** Plaintiffs' claims are typical of the other members' claims within the Classes because all members of the Classes were comparably injured through Defendant's substantially uniform misconduct, as described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other members of the Classes that they

represent, and there are no defenses that are unique to the Plaintiffs. The claims of Plaintiffs and members of the Classes arise from the same operative facts and are based on the same legal theories

99.     **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action litigation.

100.    **Superiority**: Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small, such that, absent representative litigation, it would be infeasible for member of the Classes to redress the wrongs done to them. Defendant has acted on grounds applicable to the Classes, thereby making appropriate final injunctive and declaratory relief concerning the Classes as a whole.

101.    Plaintiffs make the following specific allegations with as much specificity as possible, although Plaintiffs do not yet have the benefit of discovery to access information necessarily available only to Defendant at this stage of the litigation.

## VI.    CAUSES OF ACTION

### COUNT ONE

**FRADULENT CONCEALMENT AND MISREPRESENTATION**
**(On Behalf of Plaintiffs and the Classes)**

102.    Plaintiffs incorporate each and every factual allegation set forth in Paragraphs 1-18 and 30-92.

103.    Defendant was aware of the defective and dangerous condition of its Platform. Defendant was aware that its Platform posed a serious safety risk to minors and that it was not taking sufficient steps to address these risks.

104.    Defendant was obligated to disclose to parents – prior to parents' purchase of Robux, which in turn funded the Platform – and to the public the serious safety risk that its Platform posed to minors and that it was not taking sufficient steps to address these risks. Instead,

Defendant attempted to conceal the fact that they were not sufficiently addressing the safety risks on the Platform, and attacking and silencing critics that attempt to expose this risk.

105.    Defendant repeatedly and continuously made false assertions about the safety and privacy of its Platform, and the steps they were taking to address the safety risks on the Platform. Defendant misled parents about the risks to minors caused by its Platform, and the lack of sufficient safety measures that it was implementing.

106.    Defendant was aware of the risks posed to minors by its Platform, and that it was not sufficiently addressing those risks, based on external reporting, police reports, and its own internal reporting.

107.    Plaintiffs were unaware that the Defendant was not taking sufficient steps to ensure the safety of minors on the Platform. Plaintiffs were unaware that Defendant had failed to sufficiently invest time and money into fixing the safety issues on the Platform.

108.    Defendant was aware that its concealment and misrepresentations were material. Defendant repeatedly attempted to assure users and parents that its application was safe, an appropriate platform for learning and social experiences for minors, and that it was working to maintain the safety of users on the Platform

109.    A reasonable person, including Plaintiffs, would find the concealed and misrepresented information material when deciding whether to use Defendant's application, allow their children to use Defendant's application, and spend money on the Platform.

110.    Reasonable users, including Plaintiffs, would consider the danger to minors caused by Defendant's application and Defendant's insufficient attempts to address safety on the Platform when considering whether to allow their children to use Defendant's application and whether to spend money on the Platform.

111.    As a direct and proximate result of Defendant's concealment of material information and misrepresentations, Plaintiffs were unaware, and could not have been aware, of the Defendant's refusal to implement sufficient safety measures, and its concealment of any reports on the Platform's lack of safety measures.

112.    If Defendant had properly disclosed the fact that it was not taking sufficient measures to address the safety risks on the Platform, Plaintiffs would have acted differently and/or would not have used Defendant's application.

113.    Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's platform, and bought Robux on Defendant's platform, in the belief that Defendant would spend part of that income on adequate safety measures. If Plaintiffs were aware of Roblox's lack of safety measures, danger to minors and Defendant's lack of spending on safety features, they would have spent less money on Robux, or not spent any money on the Platform at all.

114.    Should Roblox begin taking the necessary steps to secure its younger users, Plaintiffs would resume use of the Platform.

115.    Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers.

## COUNT TWO

### NEGLIGENT MISREPRESENTATION
### (On Behalf of Plaintiffs and the Classes)

116.    Plaintiffs incorporate each and every factual allegation set forth in Paragraphs 1-18 and 30-92.

117.    Defendant knew about the safety risks posed by the Platform. Defendant was also aware that it had failed to provide proper safety features for the Platform and had failed to provide adequate warning of the harm that the Platform could cause.

118.    Defendant repeatedly and continuously made false assertions about the safety and privacy of the Platform. Defendant misled parents about the risks to minors caused by the Platform, and the lack of safety protocols in place.

119.    By making these misrepresentations, Defendant negligently misled Plaintiffs into believing that Defendant was taking sufficient steps to protect the safety of minors on the Platform.

120.    Defendant made numerous misrepresentations about its efforts to make the Platform safe for minors. Plaintiffs relied on these misrepresentations when they chose to use the Platform and allow their children to use the Platform.

121.    Defendant had no reasonable grounds for believing that its misrepresentations that it was taking sufficient measures to protect minors were true.

122.    As a direct and proximate result of Defendant's concealment of material information and misrepresentations, Plaintiffs were unaware, and could not have been aware, of the Defendant's refusal to implement sufficient safety measures, and its concealment of any reports on the Platform's lack of safety measures.

123.    If Defendant had not made misrepresentations that it was taking sufficient measures to address the safety risks on the Platform, Plaintiffs would have acted differently and/or would not have used Defendant's Platform. Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's Platform, and bought Robux on Defendant's Platform, in the belief that Defendant would spend part of that income on adequate safety measures. If Plaintiffs were aware of Defendant's lack of safety measures, danger to minors and Defendant's lack of spending on safety features, they would have spent less money on Robux, or not spent any money on the Platform at all.

124.    Should Roblox begin taking the necessary steps to secure its younger users, Plaintiffs would resume use of the Platform.

125.    Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT THREE

### NEGLIGENCE
### (On Behalf of Plaintiffs and the Classes)

126.    Plaintiffs incorporate each and every factual allegation set forth in Paragraphs 1-18 and 30-92.

127.    At all relevant times, Defendant developed, set up and managed the Platform. Defendant continues to update, control, moderate and maintain the Platform. At all times, Defendant also operated, marketed, advertised, promoted, and benefited from the Platform.

128.    Defendant owed Plaintiffs a duty to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, moderation, and control of the Roblox application and not to create an unreasonable risk of harm from the use of the Platform.

129.    Defendant owed Plaintiffs a duty to not allow Plaintiffs to be vulnerable to child sexual abuse and exploitation on the Platform.

130.    Defendant owed Plaintiffs a duty to protect Plaintiffs from harm on the Platform, including protecting them from sexual exploitation and exposure to sexual and content.

131.    Defendant owed a duty to Plaintiffs to not invite or encourage them to engage in dangerous or risky behavior, such as the dangers and risks of sexual exploitation that were caused by the Platform. These duties govern Defendant's own specific actions and are based on direct actions Defendant took in developing the Platform and its features.

132.    Additionally, Defendant owed Plaintiffs a special relationship duty to protect Plaintiffs from any harm caused by the Platform or other users on the Platform.

133.    As a business, Defendant had a duty to protect customers against reasonably foreseeable criminal acts of third parties on the Platforms, such as sexual exploitation.

134.    Defendant was in a superior position to provide protection to Plaintiffs on the Platform. Defendant was in full control of the Platform, and was able to enact rules and regulations, add warnings and moderate content on the Platform. Plaintiffs' protection from any

harm caused by the Platform and users on the Platform was totally dependent on Defendant and Defendant's actions.

135.    Defendant materially benefited from the relationship between Defendant and the Plaintiffs. The profitability and value of the Platform depends on the number of daily users on the Platform. Plaintiffs also bought Robux, an in-game currency, from Defendant, thereby materially benefiting Defendant.

136.    Defendant repeatedly and public voluntarily undertook the responsibility of protecting minor users on the Platform, Defendant's repeated public statements led Plaintiffs to believe that they could rely on Defendant for protection from any harms caused by the Platform or users on the Platform.

137.    Plaintiffs were reasonably foreseeable users of the Platform. Defendant has repeatedly advertised the Platform as a platform for learning and a place for users of all ages to connect socially.

138.    Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Plaintiff's use of the Platform.

139.    Defendant knew, or should have known by the exercise of reasonable care, that the reasonably foreseeable use of the Platform was dangerous, harmful and injurious to users such as Plaintiffs.

140.    Defendant knew, or should have known by the exercise of reasonable care, that the Platform was dangerous for minors.

141.    Defendant knew, or should have known by the exercise of reasonable care, of external reporting, police reports and its own internal reporting that the Platform posed a danger to minors of sexual exploitation and exposure to sexual and pedophiliac content.

142.    Defendant knew, or should have known by the exercise of reasonable care, that minor users on the Platform would be unable to fully or properly protect themselves from the aforementioned harm caused by the Platform, and that minor users would be materially harmed

and injured by the sexual exploitation and exposure to sexual and pedophiliac content caused by the Platform.

143.    Defendant's conduct caused and were related to Plaintiff's injuries. Defendant's negligent breach of duty, its failure to disclose the harms caused by the Platform, its failure to warn of the lack of proper and sufficient safety features on the platform and its failure to implement proper and sufficient safety features, proximately and foreseeably caused Plaintiffs' injuries.

144.    Defendant could have avoided Plaintiffs' injuries and upheld its duty of care through minimal cost and effort. Defendant could have implemented further safety features on the Platform such as:

      i.  Requiring age verification for all users on the Platform.

      ii.  Requiring enforceable parental permission for all minor users of the Platform.

      iii.  Requiring parental warnings for minor users receiving and sending direct messages

      iv.  Requiring parental warnings for minor users logging onto the Platform

      v.  Requiring every Roblox "experience" to be manually reviewed and approved before it was launched on the Platform.

      vi.  Properly implementing systems to report CSAM on the Platform.

      vii.  Disabling direct messages between all minor users and other users.

      viii.  Expanding its moderator staff and increasing its responsiveness to reports from other users.

      ix.  Other applicable and comparable methods of preventing the harm caused to Plaintiffs and other users.

145.    Defendant breached its duty of care to Plaintiffs by failing to implement any of the aforementioned safety features on the Platform.

146. Defendant breached its duty of care to Plaintiffs by failing to warn them of sexual exploitation on the Platform, by failing to warn them of the lack of proper and sufficient safety features on the Platform, and by failing to implement proper and sufficient safety features on the Platform.

147. Defendant breached its duty of care to Plaintiffs by allowing features on the Platform to be used for sexual exploitation, failing to properly address or improve these features to avoid their use for sexual exploitation and by ignoring and attempting to cover up the incidents of sexual exploitation on the Platform.

148. A reasonable company under the same or similar circumstances as Defendant would have developed, set up, managed, maintained, supervised, and operated the Platform in a manner that is safer for and more protective of Plaintiffs and other users.

149. At all relevant times, Plaintiffs used Defendant's app, the Platform, in the manner in which it was intended to be used.

150. Plaintiffs were injured by Defendant's breach of duty through no fault of their own. The types of acts and risks that caused Plaintiffs' injuries were not the type of risks that would be immediately apparent from using the Platform. Defendant's portrayal of the Platform as a platform for children and education made Plaintiffs unaware of the risks and harms contained on and within the Platform.

151. Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's platform, and bought Robux on Defendant's platform, in the belief that Defendant would spend part of that income on adequate safety measures. If Plaintiffs were aware of Roblox's lack of safety measures, danger to minors, and Defendant's lack of spending on safety features, they would have spent less money on Robux, or not spent any money at all on the Platform.

152. Should Roblox begin taking the necessary steps to secure its minor users, Plaintiffs would resume use of the Platform.

153.    Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's Platform, and bought Robux and microtransactions on Defendant's platform, in the belief that the Platform was safe for users, including children. Plaintiffs, with the knowledge that the Platform is unsafe for users, are not able and willing to use their Robux or purchased microtransactions on the Platform.

154.    Should Defendant begin taking the necessary steps to secure its minor users, Plaintiffs would be able and willing to resume using their Robux or purchased microtransactions on the Platform.

155.    Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers.

## **COUNT FOUR**

### **NEGLIGENCE – FAILURE TO WARN**
### **(On Behalf of Plaintiffs and the Classes)**

156.    Plaintiffs incorporate each and every factual allegation set forth in Paragraphs 1-18 and 30-92.

157.    At all relevant times, Defendant developed, set up, and managed the Platform. Defendant continues to update, operate, control, moderate, and maintain the Platform. At all times, Defendant also marketed, advertised, promoted, and benefited from the Platform.

158.    Plaintiffs were reasonably foreseeable users of the Platform. Defendant has repeatedly advertised Roblox as a platform for learning and users of all ages to connect socially.

159.    Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Plaintiff's use of the Platform.

160.    Defendant knew, or should have known by the exercise of reasonable care, that the reasonably foreseeable use of the Platform was dangerous, harmful and injurious to users such as Plaintiffs.

161.    Defendant knew, or should have known by the exercise of reasonable care, that the Platform was dangerous for minors.

162.    Defendant knew, or should have known by the exercise of reasonable care, of external reporting, police reports, and its own internal reporting that the Platform posed a danger to minors of sexual exploitation and exposure to sexual content.

163.    Defendant knew, or should have known by the exercise of reasonable care, that minor users on the Platform would be unable to fully or properly protect themselves from the aforementioned harm caused by the Platform, and that minor users would be materially harmed and injured by the sexual exploitation and exposure to sexual and pedophiliac content caused by the Platform.

164.    If Plaintiffs had been properly warned of the risks and harm caused by the Platform, they would have changed their behavior and/or not used the Platform.

165.    Because Defendant was aware of the harm and dangers posed by the Platform, including sexual exploitation and exposure to sexual and pedophiliac content, Defendant had a duty to warn all reasonably foreseeable users, including Plaintiffs, of the dangers posed by the Platform.

166.    Defendant breached its duty of reasonable care to provide warning of the dangers and harms posed by the Platform. Defendant failed to warn all reasonably foreseeable users, including Plaintiffs, of the harm and dangers posed by the Platform, including sexual exploitation and exposure to sexual content.

167.    Instead, Defendant repeatedly and consistently denied the harms posed by the Platform, reassuring users and parents that the Platform was safe for minors and all users.

168.    A reasonable company under the same or similar circumstances as Defendant would have used reasonable care to provide adequate warnings to users, including Plaintiffs, as described herein.

169.    Plaintiffs were injured by Defendant's failure to warn through no fault of their own. The types of acts and risks that caused Plaintiffs' injuries were not the type of risks that

would be immediately apparent from using the Platform. Defendant's portrayal of the Platform as a platform for children and education made Plaintiffs unaware of the risks and harms contained on and within the Platform.

170.    Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's platform, and bought Robux on Defendant's platform, in the belief that Defendant would spend part of that income on adequate safety measures. If Plaintiffs were aware of Roblox's lack of safety measures, danger to minors and Defendant's lack of spending on safety features, they would have spent less money on Robux, or not spent any money on the Platform at all.

171.    Should Roblox begin taking the necessary steps to secure its minor users, Plaintiffs would resume use of the Platform.

172.    Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's Platform, and bought Robux and microtransactions on Defendant's Platform, in the belief that the Platform was safe for users, including minors. Plaintiffs, with the knowledge that the Platform is unsafe for users, are not able and willing to use their Robux or purchased microtransactions on the Platform.

173.    Should Defendant begin taking the necessary steps to secure its minor users, Plaintiffs would be able and willing to resume using their Robux or purchased microtransactions on the Platform.

174.    Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers.

1

## COUNT FIVE

2

## NEGLIGENCE – UNREASONABLE DESIGN
**(On Behalf of Plaintiffs and the Classes)**

3

4    175.    Plaintiffs incorporate each and every factual allegation set forth in Paragraphs 1-

5    18 and 30-92.

6    176.    At all relevant times, Defendant developed, set up, and managed the Platform.

7    Defendant continues to update, operate, control, moderate, and maintain the Platform. At all

8    times, Defendant also marketed, advertised, promoted, and benefited from the Platform.

9    177.    Plaintiffs were reasonably foreseeable users of the Platform. Defendant has

10   repeatedly advertised Roblox as a platform for learning and users of all ages to connect socially.

11   178.    Defendant invited, solicited, encouraged, or reasonably should have foreseen the

12   fact, extent, and manner of Plaintiff's use of the Platform.

13   179.    Defendant knew, or should have known by the exercise of reasonable care, that

14   the reasonably foreseeable use of the Platforms was dangerous, harmful and injurious to users

15   such as Plaintiffs.

16   180.    Defendant knew, or should have known by the exercise of reasonable care, that

17   the Platform was dangerous for minors.

18   181.    Defendant knew, or should have known by the exercise of reasonable care, of

19   external reporting, police reports and its own internal reporting that the Platform posed a danger

20   to minors of sexual exploitation and exposure to sexual and pedophiliac content.

21   182.    Defendant knew, or should have known by the exercise of reasonable care, that

22   minor users on its Platform would be unable to fully or properly protect themselves from the

23   aforementioned harm caused by the Platform, and that minor users would be materially harmed

24   and injured by the sexual exploitation and exposure to sexual content caused by the Platform.

25   183.    Defendant owed a duty to all reasonably foreseeable users, including Plaintiffs, to

26   design a safe platform.

27   184.    Plaintiffs were reasonably foreseeable users of the Platform.

28

185.    Defendant breached its duty in designing the Platform.

186.    Defendant breached its duty by designing the Platform in a way that allowed users to sexually exploit other users, including minors, and share sexually explicit content with minors.

187.    Defendant breached its duty by designing an app that was less safe to use than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

188.    Defendant breached its duty by failing to design into the Platform any of the safety features and safeguards that would protect reasonably foreseeable users, such as Plaintiffs, from harm.

189.    Plaintiffs were injured by Defendant's breach of duty to reasonably design the Platform through no fault of their own. The types of acts and risks that caused Plaintiffs' injuries were not the type of risks that would be immediately apparent from using the Platform. Defendant's portrayal of the Platform as a platform for children and education made Plaintiffs unaware of the risks and harms contained on and within the Platform.

190.    Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's Platform, and bought Robux on Defendant's Platform, in the belief that Defendant would spend part of that income on adequate safety measures. If Plaintiffs were aware of Roblox's lack of safety measures, danger to minors and Defendant's lack of spending on safety features, they would have spent less money on Robux, or not spent any money on the Platform at all.

191.    Should Roblox begin taking the necessary steps to secure its minor users, Plaintiffs would resume use of the Platform.

192.    Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's platform, and bought Robux and microtransactions on Defendant's Platform, in the belief that the Platform was safe for users, including minors. Plaintiffs, with the knowledge that the Platform is unsafe for users, are not able and willing to use their Robux or purchased microtransactions on the Platform.

193.     Should Defendant begin taking the necessary steps to secure its minor users, Plaintiffs would be able and willing to resume using their Robux or purchased microtransactions on the Platform.

194.     Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers.

## COUNT SIX

### STRICT LIABILITY – DESIGN DEFECT
### (On Behalf of Plaintiffs and the Classes)

195.     Plaintiffs incorporate each and every factual allegation set forth in Paragraphs 1-18 and 30-92.

196.     At all relevant times, Defendant developed, set up, and managed its product, the Platform. Defendant continues to update, operate, control, moderate and maintain the Platform. At all times, Defendant also marketed, advertised, promoted, and benefited from the Platform.

197.     Defendant's product is Roblox, a platform for gaming content and social experiences. Users sign into the Platform through a personalized account.

198.     Defendant's product is available to download and install on various platforms, including Android, iOS, Windows, PlayStation, Xbox, Meta Quest and Amazon. While differences exist between versions, all versions of the Platform connect to the same servers, can access the same content and can be used to message other users.

199.     The Platform is a dangerous and defective product.

200.     The Platform's defective design allows predators to take advantage of the product's social and private messaging features to sexually exploit and message minors on the product.

201.    The Platform was defectively designed with these defective features before it launched on the aforementioned platforms, and these defective features were not adequately addressed before or after release.

202.    The Defendant was aware of the defects in the Platform before and after it was released and failed to remedy the defects in an adequate fashion. Defendant failed to fix the design defects that allowed predators to groom and sexually exploit users on the Platform.

203.    Defendant could have addressed these design defects by implementing proper age verification, increasing moderation, increasing manual oversight or by implementing other methods of fixing the dangerous, harmful and defective design.

204.    Defendant could have addressed these design defects by implementing by:

    i.    Requiring age verification for all users on the Platform.

    ii.    Requiring enforceable parental permission for all minor users of the Platform.

    iii.    Requiring parental warnings for minor users receiving and sending direct messages

    iv.    Requiring parental warnings for minor users logging onto the Platform

    v.    Properly implementing systems to report CSAM on the Platform.

    vi.    Requiring every Roblox "experience" to be manually reviewed and approved before it was launched on the Platform.

    vii.    Disabling direct messages between all minor users and other users.

    viii.    Expanding its moderator staff and increasing its responsiveness to reports from other users.

    ix.    Other applicable and comparable methods of preventing the harm caused to Plaintiffs and other users.

205.    Defendant could have designed its product in alternative ways that would have protected users and prevented the Platform from being used by predators, while serving effectively the same purpose, with minimal cost.

206. Plaintiffs were reasonably foreseeable users of Defendant's product and used the product in reasonably foreseeable ways.

207. Plaintiffs and other foreseeable users did not expect the product to be defectively and dangerously designed. Plaintiffs did not expect the Platform to be able to be used by predators to groom and sexually exploit other users, due to Roblox's design defects.

208. Defendant's product was defective and unreasonably dangerous when it left the Defendant's respective possession and control. The defects continued to exist through the product's distribution to and use by consumers, including Plaintiffs, who used the products without any substantial change in the products' condition. The design defects that allowed predators to use the Platform to groom and exploit other users existed when Defendant designed the Platform, when Defendant released the Platform, and when Plaintiffs used the Platform.

209. As manufacturer, designer, and seller, Defendant had a duty to inform itself with the best knowledge of the risks and the defects of its product and Defendant had such knowledge. Its victims, including Plaintiffs, lacking such knowledge, were powerless to protect themselves against unknown harms.

210. Plaintiffs were injured by Defendant's defective design of its product. The types of acts and risks that caused Plaintiffs' injuries were not the type of risks that would be immediately apparent from using the Platform. Defendant's portrayal of the Platform as a platform for children and education made Plaintiffs unaware of the risks and harms contained on and within the Platform.

211. Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's platform, and bought Robux on the Platform, in the belief that Defendant would spend part of that income on adequate safety measures. If Plaintiffs were aware of Roblox's lack of safety measures, danger to minors and Defendant's lack of spending on safety features, they would have spent less money on Robux, or not spent any money on the Platform at all.

212.    Should Roblox begin taking the necessary steps to secure its minor users, Plaintiffs would resume use of the Platform.

213.    Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's Platform, and bought Robux and microtransactions on Defendant's Platform, in the belief that the Platform was safe for users, including minors. Plaintiffs, with the knowledge that the Platform is unsafe for users, are not able and willing to use their Robux or purchased microtransactions on the Platform.

214.    Should Defendant begin taking the necessary steps to secure its minor users, Plaintiffs would be able and willing to resume using their Robux or purchased microtransactions on the Platform.

215.    Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers.

## COUNT SEVEN

### STRICT LIABILITY – FAILURE TO WARN
**(On Behalf of Plaintiffs and the Classes)**

216.    Plaintiffs incorporate each and every factual allegation set forth in Paragraphs 1-18 and 30-92.

217.    At all relevant times, Defendant developed, set up, and managed its product, the Platform. Defendant continues to update, operate, control, moderate and maintain the Platform. At all times, Defendant also marketed, advertised, promoted, and benefited from the Platform.

218.    Defendant's product is Roblox, a platform for gaming content and social experiences. Users sign into the Platform through a personalized account.

219.    Defendant's product is available to download and install on various platforms, including Android, iOS, Windows, PlayStation, Xbox, Meta Quest and Amazon. While

differences exist between versions, all versions of the Platform connect to the same servers, can access the same content and can be used to message other users.

220. The Platform's defective design allows predators to take advantage of the product's social and private messaging features to sexually exploit and message minors on the product.

221. Defendant was aware of the harm and danger that could be caused by the Platform, and failed to warn users, including Plaintiffs, of these defective and dangerous harms.

222. If Plaintiffs had been properly warned of the risks and harm caused by the Platform, they would have changed their behavior and/or not used the Platform.

223. Because Defendant was aware of the harm and dangers posed by the Platform, including sexual exploitation and exposure to sexual content, Defendant had a duty to warn all reasonably foreseeable users, including Plaintiffs, of the dangers posed by the Platform.

224. Plaintiffs and other users did not expect the product to be defectively and dangerously designed. Plaintiffs did not expect Roblox to be able to be used by predators to groom and sexually exploit other users due to Roblox's design defects.

225. Plaintiffs were injured by Defendant's failure to warn users of its product, including Plaintiffs. The types of acts and risks that caused Plaintiffs' injuries were not the type of risks that would be immediately apparent from using the Platform. Defendant's portrayal of the Platform as a platform for children and education made Plaintiffs unaware of the risks and harms contained on and within the Platform.

226. Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's Platform, and bought Robux on Defendant's Platform, in the belief that Defendant would spend part of that income on adequate safety measures. If Plaintiffs were aware of Roblox's lack of safety measures, danger to minors, and Defendant's lack of spending on safety features, they would have spent less money on Robux, or not spent any money on the Platform at all.

227.   Should Roblox begin taking the necessary steps to secure its minor users, Plaintiffs would resume use of the Platform.

228.   Plaintiffs have directly and proximately been injured and harmed by Defendant's concealment and misrepresentations. Plaintiffs used Defendant's Platform, and bought Robux and microtransactions on Defendant's Platform, in the belief that the Platform was safe for users, including minors. Plaintiffs, with the knowledge that the Platform is unsafe for users, are not able and willing to use their Robux or purchased microtransactions on the Platform.

229.   Should Defendant begin taking the necessary steps to secure its minor users, Plaintiffs would be able and willing to resume using their Robux or purchased microtransactions on the Platform.

230.   Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers.

## COUNT EIGHT

### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Classes)

231.   Plaintiffs incorporate each and every allegation set forth in Paragraphs 1-18 and 30-92.

232.   Defendant has been unjustly enriched by its failure to implement proper safety procedures to protect users, such as Plaintiffs, against sexual exploitation and sexual content, its failure to use profits from purchases on the Platform for safety measures, and by falsely representing to Plaintiffs that it was taking steps to implement sufficient safety measures on the Platform.

233.   Plaintiffs conferred benefit on Defendant by using the Platform and purchasing Robux on the Roblox marketplace.

234.    Defendant has been unjustly enriched by retaining the revenues derived by Plaintiffs' use of the Platform and purchase of Robux.

235.    Retention of those moneys under these circumstances is unjust and inequitable. Defendant has, and continues to, fraudulently maintain and represent to consumers that they implement proper safety measures on the Platform, and that the Platform is safe for minors. Plaintiffs believed that Defendant was spending part of the benefit conferred upon them by the Plaintiffs on implementing proper safety features and protocols. Instead, Defendant has retained the moneys, failed to implement proper safety features, and been unjustly enriched.

## COUNT NINE

**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code § 17500, et seq.**
**(On Behalf of Plaintiff Goss and the California Subclass Members)**

236.    Plaintiffs incorporate each and every allegation in Paragraphs 1-18 and 30-92.

237.    Cal. Bus. & Prof. Code § 17500, *et seq.*, states that "it is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise…, to make, disseminate, or cause to be made or disseminated to the public any statement, concerning … personal property … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

238.    Robux are personal property under Cal. Bus. & Prof. Code § 17500, *et seq.*

239.    The Platform is a service under Cal. Bus. & Prof. Code § 17500, *et seq.*

240.    Defendant made untrue and misleading statements about Robux and the Platform which Defendant knew to be untrue or misleading.

241.    Defendant made untrue and misleading statements by representing that it would spend on safety features for minor users, and by stating that it would take steps to protect minor users. Defendant failed to spend on safety features and took insufficient steps to protect minor users.

242.    Defendant knew that these statements were untrue or misleading, based on external reporting, police reports, and its own internal reporting.

### COUNT TEN
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILCS 505/2
### (On Behalf of Plaintiff Davis and the Illinois Subclass Members)

243.    Plaintiffs incorporates each and every allegation in Paragraphs 1-18 and 30-92.

244.    815 ILCS 505/2 states that any "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material act, with the intent that others rely on the concealment, suppression or omission of such material fact in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

245.    "Trade" and "commerce" are defined as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State."

246.    Robux are a trade and commerce as defined by the statute, as they are intangible property sold to consumers.

247.    The Platform is a trade and commerce as defined by the statute, as it is the distribution of services to provide social and gaming functions to users.

248.    Defendant violated 815 ILCS 505/2 by using and employing deception, false promise, misrepresentation, and concealment, suppression and omission of any material act.

249.    Defendant deceived consumers by representing that it would spend on safety features for minor users, and that it would take steps to protect minor users. Defendant failed to spend on safety features and took insufficient steps to protect minor users.

250.    Defendant made false promises to consumers by representing that it would spend on safety features for minor users, and that it would take steps to protect minor users. Defendant

broke these promises, failed to spend on safety features, and took insufficient steps to protect minor users.

251.    Defendant made misrepresentations to consumers by representing that it would spend on safety features for minor users, and that it would take steps to protect minor users. Defendant broke these promises, failed to spend on safety features, and took insufficient steps to protect minor users.

252.    Defendant concealed and suppressed material acts by banning and taking legal action against users that exposed the lack of safety features on the platform.

253.    Defendant omitted material acts by failing to inform users, including Plaintiffs, that they had failed to spend on safety features and had failed to implement sufficient safety features to protect minor users.

### **COUNT ELEVEN**

**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES ACT**
**73 P.S. § 201-3**
**(On Behalf of Plaintiff Vaccaro and the Pennsylvania Subclass Members)**

254.    Plaintiffs incorporate each and every allegation in Paragraphs 1-18 and 30-92.

255.    73 P.S. § 201-3 states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful."

256.    73 P.S. § 201-2(4)(v) defines "unfair methods of competition" and "unfair or deceptive acts or practices" as "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have."

257.    "Trade" and "commerce" are defined as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth."

258.    Robux are a trade and commerce as defined by the statute, as they are intangible property sold to consumers.

259.    The Platform is a trade and commerce as defined by the statute, as it is the distribution of a services to provide social and gaming functions to users.

260.    Defendant represents that its service, Roblox, contains a characteristic – measures taken to protect minors – that it does not have.

261.    Defendant uses this misrepresentation to gain an unfair advantage, convincing consumers, such as Plaintiffs, to spend time and money on the Roblox service that they otherwise would not have.

### COUNT TWELVE

### VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
#### Colo. Rev. Stat. §§ 6-1-101 to -115
#### (On Behalf of Plaintiff Rohrs and the Colorado Subclass Members)

262.    Plaintiffs incorporate each and every allegation in Paragraphs 1-18 and 30-92.

263.    The Colorado Consumer Protection Act makes it unlawful for a person to engage in Unfair or deceptive trade practices. Colo. Rev. Stat. § 6-1-105(1)(e) defines deceptive trade practices as "[e]ither knowingly or recklessly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith."

264.    Colo. Rev. Stat. § 6-1-102(8) defines property as "any real or personal property, or both real and personal property, intangible property, or services."

265.    Robux are intangible property as defined under Rev. Stat. § 6-1-102(8).

266.    The Platform is a service as defined under Colo. Rev. Stat. § 6-1-105(1)(e).

267.    Defendant knowingly and recklessly made a false representation as to the characteristics and benefits of Robux and the Platform.

268.    Defendant made a false representation about the characteristics of Robux and the Platform by representing that Defendant was using money gained from selling Robux to improve

safety for minors on the Platform and that Defendant was actively taking steps to improve safety for minors on the Platform.

269.    Defendant made a false representation about the benefits of Robux and the Platform by representing that Defendant was actively taking steps to improve safety for minors on the Platform.

<u>**COUNT THIRTEEN**</u>

**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. § 501.204**
**(On Behalf of Plaintiff and the Florida Subclass Members)**

270.    Plaintiffs incorporate each and every allegation in Paragraphs 1-18 and 30-92.

271.    Fla. Stat. § 501.204 makes it unlawful to engage in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

272.    "Trade or commerce" is defined by Fla. Stat. § 501.203(8) as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."

273.    An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

274.    A deceptive practice is one that is "likely to mislead" consumers.

275.    Robux is a "trade or commerce" as defined by Fla. Stat. § 501.203(8) as it as intangible property.

276.    The Platform is a "trade or commerce" as defined by Fla. Stat. § 501.203(8) as it as a service.

277.    Defendant engaged in an unfair practices by falsely representing that it was using money gained from selling Robux to improve safety for minors on the Platform, by falsely

representing that it was taking steps to improve safety for minors on the platform, and by forcing parents to incur costs to protect their children on the Platform.

278.   Defendant engaged in deceptive practices by falsely representing that it was using money gained from selling Robux to improve safety for minors on the Platform and by falsely representing that it was taking steps to improve safety for minors on the Platform.

## COUNT FOURTEEN

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349, *ET SEQ.*
### (On Behalf of Plaintiff Stevens and the New York Subclass Members)

279.   Plaintiff Stevens incorporate each and every allegation in Paragraphs 1-18 and 30-92.

280.   New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

281.   In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

282.   Plaintiff Stevens and members of the New York Subclass are consumers who purchased Robux from Defendant for their personal use.

283.   By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation: (1) failing to warn or disclose to purchasers of Robux that the Platform was not safe for children; (2) failing to warn or disclose to purchasers of Robux that the Defendant was not using money gained from selling Robux to adequately secure the Platform for minors; and (3) representing that the Platform was safe for children to use.

284.   Defendant concealed and omitted material facts regarding the true nature of the Platform, including through the silencing of Platform users that raise awareness of the dangers on the Platform.

285.   The foregoing deceptive acts and practices were directed at consumers.

286.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Platform to induce consumers to purchase Robux.

287.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

288.    Defendant possessed information about the Platform, including, but not limited to the fact that the Platform was not safe for children, which was relevant to Plaintiff and Subclass members, but failed to disclose this information.

289.    By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

290.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the New York Subclass have sustained from having paid for Robux.

291.    As a result of Defendant's violations, Plaintiff Stevens and members of the New York Subclass have suffered damages because: (a) they would not have purchased Robux on the same terms, if at all, if they knew that the Defendant was not taking substantial to keep children safe on the Platform; and (b) the Platform does not have the characteristics, uses, benefits, or qualities as promised.

292.    On behalf of herself and other members of the New York Subclass, Plaintiff Stevens brings this action to enjoin Defendant's unlawful and deceptive acts or practices and seek to recover their actual damages or fifty dollars, whichever is greater, per violation, three times actual damages, and reasonable attorneys' fees.

## **COUNT FIFTEEN**

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350, *ET SEQ.***
**(On Behalf of Plaintiff Stevens and the New York Subclass Members)**

293.    Plaintiff Stevens incorporate each and every allegation in Paragraphs 1-18 and 30-92.

294.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

295.    Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

296.    Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

297.    Defendant's false, misleading, and deceptive representations and omissions of fact about the Platform were and are directed towards consumers.

298.    Defendant's false, misleading, and deceptive representations and omissions were material and are likely to mislead a reasonable consumer acting reasonably under the customary or usual circumstances.

299.    Defendant's false, misleading, and deceptive representations and omissions have resulted in consumer injury or harm to the public interest.

300.    As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiff Stevens and the New York Subclass have suffered and continue to suffer economic injury.

301.    As a result of Defendant's violations, Plaintiff Stevens and members of the New York Subclass have suffered damages because: (a) they would not have purchased Robux on the same terms, if at all, if they knew that the Defendant was not adequately protecting minor users on the Platform; and (b) the Platform does not have the characteristics, uses, benefits, or qualities as promised.

302.    On behalf of herself and other members of the New York Subclass, Plaintiff Stevens seeks to recover actual damages or five hundred dollars, whichever is greater for each violation, three times actual damages, and reasonable attorneys' fees.

## COUNT SIXTEEN

### ATTRACTIVE NUISANCE
### VIOLATION OF RESTATEMENT SECOND OF TORTS, § 339
#### (On Behalf of Plaintiffs Dekoster and Vaccaro and the Arizona and Pennsylvania Subclasses Members)

303.    Plaintiffs incorporate each and every allegation in Paragraphs 1-18 and 30-92.

304.    Both Arizona and Pennsylvania have adopted the Restatement (Second) of Torts, § 339.

305.    The Restatement 2d of Torts, § 339 subjects a possessor of land to liability for physical harm to children caused by an artificial condition upon the land if:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

306.    Here, Defendant possesses and controls the Platform.

307.    The Platform possesses numerous, hidden dangers in the form of predators looking to harm children.

308.    In light of the huge portion of the player base is made up of minors and Defendant's advertisements and statements that the Platform is an appropriate environment for children to learn and socialize, Defendant knows, or should have known, that children are likely to go onto the Platform.

309.    With the prevalence of news reports, arrests, and player experiences being shared regarding the harms children face on the Platform, Defendant knows or should have known that the dangerous conditions on the Platform would result in serious harm to such children.

310.    Defendants knew of the potential harms, such as grooming and sexual exploitation, based on external reporting, police reports, and its own internal reporting.

311.    The children on the Platform, because of their youth, do not realize the risk involved in spending time on the Platform. Children on the Platform are too young to understand the dangers of chatting online with strangers, or the dangers of revealing tidbits of personal information. Children do not understand the danger that can come from these conversations, nor the danger that can result from meeting these strangers in person.

312.    The utility to Defendant of maintaining the conditions and the burdens of eliminating the danger are slight as compared with the risk to children and their parents. The burden of eliminating the danger by providing adequate safety measures are slight compared to the danger children face from grooming and sexual exploitation on the Platform.

313.    Defendant has failed to exercise reasonable care to eliminate the danger or otherwise to protect the children on the Platform. Defendant, despite external reporting, police reports, its own internal reporting, and numerous lawsuits, has failed to take substantial steps to protect the children on the Platform.

## COUNT SEVENTEEN

### VIOLATION OF CAL. CIV. CODE § 1714
### (On Behalf of Plaintiff Goss and the California Subclass Members)

314.    Plaintiffs incorporate each and every allegation in Paragraphs 1-18 and 30-92.

315.    Cal. Civ. Code § 1714 states that a property owner is liable for "or an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."

316.    Defendant owns the Platform, and children have been injured due to Defendant's want of ordinary care or skill in the management of the Platform.

317.    Defendant, despite external reporting, police reports, its own internal reporting and numerous lawsuits has failed to take substantial steps to protect the children on the Platform.

Plaintiffs have been harmed due to Defendant want of ordinary care or skill in managing the Platform, in failing to take any substantial step to protect these children from harm.

## COUNT EIGHTEEN

### VIOLATION OF C.R.S. 13-21-115
**(On Behalf of Plaintiff Rohrs and the Colorado Subclass Members)**

318.    Plaintiffs incorporate each and every allegation in Paragraphs 1-18 and 30-92.

319.    C.R.S. 13-21-115 states that a landowner is liable to a licensee who "alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property" when the damage is caused " (I) By the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner that the landowner actually knew about; or (II) By the landowner's unreasonable failure to warn of dangers not created by the landowner that are not ordinarily present on property of the type involved and that the landowner actually knew about."

320.    A licensee is defined by C.R.S. 13-21-115(7)(c) as "a person who enters or remains on the land of another for the licensee's own convenience or to advance the licensee's own interests, pursuant to the landowner's permission or consent."

321.    Plaintiffs and their children are licensees. Defendant is a business and invites Plaintiffs onto the Platform for its own interests, to make a profit from the Platform.

322.    Defendant is liable for the injury occurring to Plaintiffs on the Platform, as the injury was caused by the Defendant's unreasonable failure to exercise reasonable care with respect to dangers created by the Defendant that the Defendant knew about it.

323.    Defendant caused the danger on the Platform by failing to take substantial steps to improve safety for minors on the platform and by falsely representing that it was taking steps to improve safety for minors on the platform.

324.    Additionally, Defendant is liable for the injury occurring to Plaintiffs on the Platform as the injury was caused by the Defendant's unreasonable failure to warn of dangers not

created by the Defendant that are not ordinarily present on property of the type involved and that the landowner actually knew about.

325.    Defendant knew based on external reporting, police reports, its own internal reporting, and numerous lawsuits that predators were using the Platform to groom and sexually exploit minors. Defendant failed to reasonably warn Plaintiffs of the dangers on the Platform created by these predators.

326.    Defendant advertised the Platform as a platform for minors to play and socialize. The danger of predators grooming and sexually exploiting children is not ordinarily present on platforms designed for minors.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a)  For an Order certifying this action as a Class Action and appointing Plaintiffs as Class Representatives and their counsel as Class Counsel;

b)  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein;

c)  For an award of actual damages, treble damages, compensatory damages, statutory damages, nominal damages, and/or statutory penalties in an amount to be determined, as allowable by law;

d)  For disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of its unlawful acts, omissions, and practices;

e)  For an award of punitive damages, as allowable by law;

f)  For an award of attorneys' fees and expenses, as allowable by law;

g)  Pre- and post-judgment interest on any amounts awarded; and

h)  Such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand a trial by jury of all issues so triable.

Dated: September 12, 2025

**LEVI & KORSINSKY, LLP**

By: <u>*Adam M. Apton*</u>
Adam M. Apton (SBN 316506)
1160 Battery Street, East Suite 100
San Francisco, CA 94111
Telephone: (415) 373-2420
Facsimile: (415) 484-1294
Email: aapton@zlk.com

Mark S. Reich*
Christopher V. DeVivo*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cdevivo@zlk.com

* *pro hac vice* forthcoming

Counsel for Plaintiffs

CLASS ACTION COMPLAINT